IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KONSTANCE L. VANN,

                              Plaintiff,

          vs.                                          Civil Action No.
                                                       6:03-CV-1387 (NAM/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                              Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY LAW FIRM                 LAWRENCE D. HASSELER, ESQ.
307 State St.
Carthage, New York 13619

FOR DEFENDANT:

HON. GLENN T. SUDDABY                  WILLIAM H. PEASE, ESQ.
United States Attorney for the         Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL              BARBARA L. SPIVAK, ESQ.
Social Security Administration         Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                     KIMBERLY L. SCHIRO, ESQ.
                                       Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

## REPORT AND RECOMMENDATION

Plaintiff Konstance L. Vann, who suffers chiefly from pain associated with a cervical spine condition resulting in neck pain which radiates into her shoulder – though claiming also to experience various other physical and mental conditions – has commenced this action seeking judicial review of the denial of her application for supplemental security income ("SSI") benefits pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  In support of her request for review, plaintiff argues that the administrative law judge ("ALJ") who decided the matter failed to give proper consideration to the cumulative effects of her various conditions and the resulting limitations on her ability to perform work functions and that, in carrying the Commissioner's burden at step five of the relevant inquiry, the ALJ should have been required to elicit testimony from a vocational expert rather than relying upon the medical-vocational guidelines set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2 (the "grid").  Plaintiff further maintains that the ALJ's determination improperly overlooks portions of an opinion rendered by a treating source, and additionally results from the improper and unexplained rejection of subjective testimony regarding her pain and

the limitations caused by it.  Finally, plaintiff argues that the ALJ's analysis

of her diagnosed mental impairment did not comport with applicable

regulations prescribing a method for evaluating such conditions.

Having carefully reviewed the record in light of plaintiff's arguments,

I find that the Commissioner's determination of no disability, even when

considered in light of the governing, deferential standard, is flawed as a

result of the ALJ's failure to properly analyze plaintiff's mental impairment

and detail his findings with respect to that inquiry, and should therefore be

set aside.

I.    BACKGROUND

Plaintiff was born on January 22, 1964; at the time of the hearing in

this matter, she was thirty-eight years old.  Administrative Transcript at pp.

25, 86.[1]  Plaintiff is not married, and has four children ranging in age at the

time of the hearing from seventeen years down to nine months old.  AT

25-26.  Plaintiff resides, together with her four children and the father of

her youngest, in a mobile home located in Heuvelton, New York.  AT 26,

86.

Plaintiff attended school through the ninth grade.  AT 26-27.  While

---

[1]    Portions of the Administrative Transcript (Dkt. No. 4), which was filed by
the Commissioner with the agency's answer, will be cited as "AT ___."

in school, plaintiff was assigned to special education classes, having been identified as learning disabled, and additionally suffering from a speech impediment.  AT 28.  Plaintiff is partially illiterate, having only a limited capacity to read and write.[2]  AT 27.

Plaintiff has no prior full time work history, AT 32-33, although over time she has held three part time employment positions.  AT 115.  At the time of the hearing plaintiff was working two days out of each week, on weekends, for a period of five hours each day, at a local motel and resort loading bedding and towels into washers and dryers, folding those items, and placing them on shelves.  AT 32.  Because of her limitations, accommodations have been made for the plaintiff to assist her in following the directions for washing and drying different items, and on days when she is unable to complete her work due to pain she is permitted to return the next day to complete the task.  AT 60.

Plaintiff attributes her inability to perform in a full time work setting to pain resulting from arthritis and spinal difficulties, although she is unable to definitively attribute her back condition to any specific trauma.  *See* AT

_____

[2]      While plaintiff claims to be functionally illiterate, *see* AT 27, she possesses a driver's license, AT 28, and findings made during the course of psychological evaluation and testing reflect her ability to read at a fourth grade level, AT 223.

33-34.  Medical records from the Ogdensburg Health Center ("OHC"),

where she has routinely sought treatment for various symptomology,

reflect that in or about August of 1997 plaintiff began to experience back

pain, described as mostly occurring at night while she is lying in bed and

being "high in [the] back" and accompanied by dull headaches.  AT 133.

At that point it was noted that the pain could be stress induced and/or

caffeine related.  *Id.*  Plaintiff later presented at a local emergency room

on March 29, 1998 seeking relief from neck pain, but three days later

reported that while still present, the pain had subsided.  AT 134.  On that

occasion plaintiff was advised to continue taking Darvocet, and physical

therapy was recommended.  *Id.*

       The next reference in plaintiff's records to neck and back pain is a

report of a visit to the OHC on November 24, 1998, during which she

complained of lower back discomfort.  AT 139.  During a follow-up visit on

December 1, 1998 with Registered Physician's Assistant ("RPA") Mark

Mazzye, at the OHC, it was noted that the pain had "improved

dramatically[,]" although passing reference was made by the plaintiff to

pain in the posterior lung area, mostly on her left side.  AT 141.  During

that examination, plaintiff attributed the pain to having been "kneed in the

back" approximately one and one-half years prior to the date of the examination.  *Id.*

On July 8, 1999 plaintiff presented to RPA Mazzye, complaining of a sore neck.  AT 148.  At that time plaintiff reported having experienced similar symptoms in the past, but stated that those had resolved with the assistance of physical therapy.  *Id.*  Reviewing the results of magnetic resonance imaging ("MRI") testing conducted in April of 1999, RPA Mazzye diagnosed plaintiff as suffering from a bulging disc at the C5-C6 level, and prescribed Vicodin, as needed, as well as physical therapy.[3]  AT 148.  Upon plaintiff's return to the OHC on November 19, 1999, complaining of pain in the left side of her neck, RPA Mazzye discerned mild distress and some tenderness and limitation in range of motion, and assessed plaintiff as suffering from left sided neck muscle strain/pain, for which Flexeril and Vicodin were prescribed.  AT 150.

Plaintiff continued to complain of neck and upper back pain during subsequent appointments at the OHC throughout 1999 and 2000, with little change in either her condition or the prescribed course of treatment.  *See, e.g.*, AT 151, 154, 156, 158.  By all accounts, at least over that

---

[3]     RPA Mazzye's entry appears to reference an MRI conducted on April 24, 1999, at the request of Dr. Lucas Koberda.  *See* AT 247.

period, the pain had been experienced by the plaintiff on a sporadic basis.

On June 18, 2001, plaintiff presented to RPA Mazzye with complaints of severe pain in the neck and right shoulder region, stating that the pain had "started" on the previous Saturday when she extended her neck to look up at the ceiling.  AT 160.  On that occasion RPA Mazzye assessed plaintiff as suffering from muscle spasm, strain and pain, and prescribed Flexeril, Darvocet, and physical therapy.  *Id.*  During her next visit to RPA Mazzye on July 16, 2001, however, Vann reported that her muscle spasms and strain were better, though she still suffered from those pains "episodically."  AT 161.  A report of a subsequent visit on August 9, 2001 to RPA Mazzye to address a suspected pregnancy contains no reference to any ongoing complaints of back and neck pain. AT 165.

Apparently at the request of RPA Mazzye, MRI testing was conducted on August 27, 2002 of plaintiff's lumbar, thoracic, and cervical spine regions.  AT 252-55.  Results of the thoracic spinal MRI were normal.  AT 253.  The MRI of plaintiff's lumbar spine revealed no disc herniations, but with mild to moderate degenerative disc disease as well as mild posterior disc bulging at L2-3 and L5-S1 levels, though without

any superimposed disc herniation.  AT 252.  Reports of the cervical region

MRI reflected spurring at the C4-5 level with encroachment of left neural

foramen and moderate disc bulging at C5-6 and C6-7, with mild

indentation of the thecal sac unaccompanied by evidence of spinal

stenosis.  AT 254.  Despite these MRI findings, notes of a visit by plaintiff

to RPA Mazzye on September 23, 2002, complaining of a possible right

ear infection, are silent with regard to plaintiff's neck and back pain.  AT

256.  Plaintiff did later report suffering from chronic back pain, though

apparently in the lumbar spine region, during a subsequent consultation

with RPA Mazzye on November 19, 2002.  AT 257.  During that visit RPA

Mazzye noted that plaintiff did not appear to be in acute distress, and

provided her with a referral for physical therapy as well as prescriptions for

Flexeril and Extra Strength Tylenol.  *Id.*

In addition to complaining of back and neck pain, plaintiff has

registered complaints of headaches, blurred vision, partial facial

numbness and, although she has never sought or obtained treatment for

any mental condition, anxiety.  *See*, *e.g.*, AT 194-95.  Those complaints

led in April of 1999 to an MRI examination of plaintiff's brain, the results of

which were largely unremarkable other than to note "findings suspicious

for inflammatory changes in the mastoid air cells and in the middle ear cavity on the right side." AT 198.  A carotid ultrasound administered earlier on December 29, 1998, reflected results consistent with moderately severe disease of 50%-79% diameter stenosis in both right and left internal carotid arteries.  AT 169-70.  Holter monitor testing on that same date failed to reflect any evidence of arrhythmias.  AT 168.  Plaintiff was referred to Dr. J. Lucas Koberda for a consultation regarding her headaches, *see* AT 194, although that specialist later noted on June 14, 1999 that plaintiff's chronic tension headaches had improved spontaneously.  AT 197.

In addition to treatment from these various sources plaintiff has been examined, both physically and mentally, by agency consultants.  On October 3, 2001, Dr. Murli Agrawal, of Main Medical Evaluations, P.C. in Watertown, New York, conducted a physical examination of the plaintiff. AT 215-16.  That evaluation yielded largely unremarkable results, with Dr. Agrawal concluding that plaintiff suffers from neck pain characterized as representing only "minimal impairment".  *Id.*

On October 15, 2001 plaintiff was psychologically evaluated by William Kimball, Ph.D.  AT 219-24.  In conjunction with that evaluation

various testing was administered, including the Wechsler Adult Intelligence Scale - III Edition ("WAIS-III") and a Reading Subtest from the Wide Range Achievement Test-Revision No. 3 ("WRAT-3"). *Id.* Based upon his evaluation and testing, Dr. Kimball rendered an Axis I diagnosis of depressive disorder, not otherwise specified ("NOS"), and reading disorder, and assigned a global assessment of functioning ("GAF") score of 50.[4] AT 223. While Dr. Kimball concluded that plaintiff is in the low average range of intelligence, he opined that she is "brighter" than portrayed and has particularly good short term memory skills, and visual motor skills, as well as the ability to understand oral directions well. AT 222-24. Dr. Kimball further reported that plaintiff is capable of performing hands-on tasks which require very limited reading and only simple calculations. AT 224.

At the hearing plaintiff testified that notwithstanding her impairments she is capable of taking care of her needs, including bathing, dressing, feeding herself, and cooking. AT 48. Plaintiff is also able to vacuum,

---

[4]       The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").  A GAF score of 50 indicates the existence of serious mental health symptoms or serious impairment in social, occupational or school functioning. *Id.*

wash dishes, do laundry, and make beds and with the help of her children, shop for groceries.  AT 49.  Plaintiff has a driver's license, and drives regularly.  AT 28.  Plaintiff also dines out at restaurants, attends church, and can do light yard work.  AT 52-54.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

Plaintiff filed an application for SSI benefits with the agency on or about August 14, 2000, claiming a disability onset date of January 1, 1999.  AT 86-88.  That application was denied on or about November 9, 2001.  AT 69-73.

At plaintiff's request, a hearing was conducted with respect to the denial of her application for SSI benefits on December 16, 2002 before ALJ John M. Lischak.  *See* AT 18-68.  Following that hearing ALJ Lischak issued a decision, dated June 25, 2003, finding that the plaintiff was not disabled at any time through the date of decision, and consequently upholding the denial of benefits.  AT 11-16.   In his decision ALJ Lischak began by apparently assuming, although his decision is silent on this issue, that plaintiff was not gainfully employed during the relevant period.[5]

---

     [5]     ALJ Lischak's decision makes reference to a part-time position held by the plaintiff doing laundry at a motel.  AT 15.  Such part-time employment does not

The ALJ next determined that plaintiff suffers from the existence of a severe impairment, but that it does not meet or equal in severity any of the presumptively disabling impairments set forth in the governing regulations, C.F.R. Pt. 404, Subpt. P, App. 1.  AT 13.

Proceeding to apply the balance of the familiar, five part test for determining disability, ALJ Lischak concluded from his review of the evidence that the plaintiff retains the residual functional capacity ("RFC") to perform a full range of sedentary work.  AT 13-14.  Noting that plaintiff had no history of past relevant work, as defined under the regulations, *see* 20 C.F.R. § 416.920; AT 14, ALJ Lischak proceeded to step five, applying his RFC finding to the grid, and concluding under Rule 201 thereof that a finding of no disability was dictated.  AT 15-16.  The ALJ's decision became a final determination of the agency when, on September 20, 2003, the Social Security Administration Appeals Council denied plaintiff's request for review.  AT 4-6.

B.     This Action

Plaintiff commenced this action on November 17, 2003.  Dkt. No. 1. Issue was thereafter joined by the filing on January 12, 2004 of an answer

---

qualify as gainful employment for purposes of the applicable disability determination standard.  *See* 20 C.F.R. §§ 404.1572-404.1574.

on behalf of the Commissioner, accompanied by an administrative

transcript of the proceedings and evidence before the agency.  Dkt. Nos.

3, 4.  With the filing on February 3, 2004 of plaintiff's brief, Dkt. No. 5, and

a brief on behalf of the Commissioner on March 17, 2004, Dkt. No. 7, the

matter is now ripe for determination, and has been referred to me for the

issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[6]  *See*

*also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

---

[6]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr. on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp.2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more

-14-

than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health &*

*Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand

the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638,

644 (2d Cir. 1983).

     B.    <u>Disability Determination: The Five Step Evaluation Process</u>

     The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f),

416.920(f).

   The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

   C.   The Evidence In This Case

   In support of her appeal of the agency's determination, plaintiff

asserts that the Commissioner's resort to the grid was inappropriate.

Plaintiff challenges the ALJ's RFC finding, to the effect that from an

exertional standpoint she retains the ability to perform a full range of

sedentary work, as both unsupported by the record and undermined by a

contrary opinion from her treating source, RPA Mazzye.  Plaintiff also

maintains that the ALJ failed to consider her other impairments, including the diagnosed mental conditions as well as her headaches, dizziness, loss of balance, loss of vision, and hearing difficulties.[7]  Plaintiff further argues that the ALJ failed to properly assess her credibility and explain his reasons for rejecting her subjective testimony regarding limitations presented by her various conditions.

     1.   RFC

_____Pivotal to the ALJ's determination of no disability is his finding that plaintiff retains the RFC to perform a full range of sedentary work.[8]  As has

---

     [7]      In her brief, plaintiff maintains that the ALJ's failure to examine each of her conditions and determine, at step two of the relevant inquiry, their severity warrants reversal of the determination of no disability.  *See* Plaintiff's Brief (Dkt. No. 6) at 12-13.  Because the ALJ concluded that one or more of plaintiff's conditions, either individually or in combination, were sufficiently severe to pass muster at that point in the five step evaluative process, his failure to determine, on a condition by condition basis, the issue of step two severity is not outcome determinative.  The more critical point at which the impact of those conditions must be considered is in determining plaintiff's RFC and her ability to perform either past relevant work, or other work which is available within the national economy.  *See Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. & DiBianco, M.J.).

     [8]      Sedentary work is defined by regulation as follows:

     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary

been noted, plaintiff challenges this RFC determination.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587). An

---

work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period. *See* Social Security Ruling 83-10.

administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The ALJ's finding of plaintiff's ability to perform the exertional functions associated with sedentary work is supported by both RFC assessments in the record and Ms. Vann's testimony regarding her limitations and daily activities. Plaintiff's own treating source, RPA Mayzze, has concluded that plaintiff is capable of sitting, standing and walking for six hours in an eight hour work day. AT 162. This assessment is consonant with the requirements of sedentary work. *See* 20 C.F.R. § 416.967(a). It is true, as plaintiff notes, that RPA Mazzye also stated plaintiff cannot lift or carry even ten pounds, and is unable to crawl or climb. AT 163. These findings by RPA Mayzze, however, are inconsistent with plaintiff's own hearing testimony, to the effect she can lift up to ten pounds and retains the ability to crawl and climb, which testimony is fully supportive of the ALJ's findings in this regard. *See* AT 40-41, 43.

Plaintiff argues that the nonexertional limitations resulting from her medical conditions, including those associated with her diagnosed mental condition and headaches, dizziness, and loss of balance, significantly erode her RFC and render resort to the grid inappropriate.  While it is true as a result of his psychological evaluation and testing, Dr. Kimball diagnosed the plaintiff as suffering from a depressive disorder, there is no indication in his report to suggest that it interferes with her ability to perform the nonexertional requirements of sedentary work.  To the contrary, Dr. Kimball found that plaintiff is able to perform hands-on tasks involving limited reading and simple calculations.  AT 224.  The report of a consultant such as Dr. Kimball who has examined a claimant can provide substantial evidence in support of an ALJ's conclusion.  *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

The nonexertional requirements of sedentary work are relatively modest, requiring, *inter alia*, the lifting of objects weighing less than ten pounds.  There is no indication in the record that plaintiff is incapable of meeting a full range of these nonexertional elements associated with sedentary work.

2.     Subjective Complaints of Pain

-22-

In her appeal, plaintiff also challenges the ALJ's apparent rejection of her testimony regarding symptoms experienced by her and the limitations associated with them.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

-23-

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[9] *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

---

[9]       In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

During the hearing, plaintiff described in various ways the pain which she experiences as a result of her medical conditions.  Plaintiff testified that she suffers from daily pain literally from head to toe, including in her neck and arm, as well as her back and shooting pains down into her legs. AT 34, 37, 61, 64.  When plaintiff experiences a pinched nerve she is unable to drive or even move, and is required to lay flat on a bed under heavy medication several days at a time.  AT 35.

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of neck and back conditions.  The fact that she suffers from discomfort, however, does not automatically qualify

-25-

her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

Significantly, plaintiff's brief does not elaborate as to the portions of plaintiff's testimony alleged to have been improperly rejected by the ALJ based upon his credibility findings. Indeed, much if not most of plaintiff's testimony, both concerning her exertional capabilities and regarding her daily activities, is fully supportive of the ALJ's determination that she retains the RFC to perform a full range of sedentary work. *See*, *e.g.*, AT 39-43. Moreover, this fact is borne out by plaintiff's testimony that she is working in a part-time position doing laundry in a local motel. AT 31.

To the extent that it could be viewed as inconsistent with the RFC finding, the ALJ carefully reviewed plaintiff's testimony and explained how, in his view, that testimony related to and was consistent with his ultimate RFC findings. *See* AT 14-15. While the evidence adduced at the hearing is overwhelmingly supportive of the ALJ's ultimate finding, to the extent that he may have rejected portions of the claimant's testimony regarding the severity of her limitations that rejection is adequately illuminated in the ALJ's opinion, and supported by evidence in the record.

### 3.     Evaluation of Plaintiff's Mental Condition

    *The most troublesome aspect of the ALJ's decision is the lack of*
any meaningful analysis of plaintiff's diagnosed mental condition and its
impact upon her ability to perform various work-related functions.  This,
plaintiff maintains, establishes a failure to comply with the governing
regulations regarding analysis of mental conditions and should prove fatal
to the Commissioner's determination.

    When there is evidence of a mental impairment that allegedly
prevents a claimant from working, the Commissioner must follow a special
procedure at each level of administrative review.  *See* 20 C.F.R. §§
404.1520a, 416.920a.  The Commissioner first record the pertinent signs,
symptoms, findings, functional limitations, and effects of treatments
contained in the record.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If a
mental impairment is determined to exist, the Commissioner must next
indicate whether certain medical findings which have been found
especially relevant to the ability to work are present or absent.  *Id.* §§
404.1520a(b)(2), 416.920a(b)(2).  In doing so the Commissioner rates the
degree of functional loss resulting from the impairment – on a scale
ranging from no limitation to severe limitation, the latter of which is
incompatible with the ability to do work-like functions – analyzing four

specific factors, including 1) activities of daily living; 2) social functioning;
3) concentration, persistence, and pace; and 4) deterioration or
decompensation in work or work-like settings.  *Id.* §§ 404.1520a(c)(3),
416.920a(c)(3).

The Commissioner must then determine the severity of the mental
impairment.  *Id.* §§ 404.1520a(d), 416.920a(d)(2).  Where the
Commissioner rates the degree of limitation in the first three functional
areas as "none" or "mild", and "none" in the fourth functional area, the
Commissioner will generally conclude that claimant's impairment is not
severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1),
416.920a(d)(1).  If, on the other hand, the Commissioner finds the
claimant's medical impairment to be severe, she must determine whether
it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2),
416.920a(d)(2).  In the event the impairment is deemed severe, but does
not meet or equal a listed mental disorder, the Commissioner next
analyzes the claimant's RFC, considering whether he or she is limited in
the ability to carry out certain mental activities – such as limitations in
understanding, remembering, and carrying out instructions, and in
responding appropriately to supervision, co-workers, and work pressures

in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

An ALJ is no longer required under the governing regulations to append a Psychiatric Review Technique Form ("PRTF") to his or her decision when addressing a case when a psychological impairment is implicated.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL 1173632, at *50758.  The ALJ is, however, nonetheless subject to the requirement that an analysis of whether a mental impairment exists be incorporated or in some way embodied within his or her decision when evidence of such an impairment is presented.  20 C.F.R. §§ 404.1520a. In this case the ALJ's decision does not include an analysis which satisfies this requirement.

To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).  In this case there are both notes in some of plaintiff's medical records and a psychological consultant's report reflecting the existence of at least some

-29-

degree of mental impairment.  *See*, *e.g.*, AT 126-28, 154, 219-38.  Since

this initial requirement is satisfied, it was incumbent upon the ALJ to make

an analysis of the effects of that mental impairment upon the various

areas referenced in the pertinent regulations.  In this instance, however,

the ALJ failed to make the required analysis, instead simply referring to

the psychiatric review technique form completed by a non-examining state

agency psychologist indicating that claimant's depression was not severe.

*See* AT 14; *see also* AT 225-38.  This falls far short of satisfying the

obligation imposed by the regulations by the ALJ when evaluating a

mental impairment, and provides a basis for reversal of the

Commissioner's determination of no disability.  20 C.F.R. § 416.920a.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

     The ALJ's determination that plaintiff is not disabled is heavily

dependent upon the finding that she retains the capabilities to perform the

relatively modest exertional requirements of the full range of sedentary

work, and that her mental condition does not preclude her from performing

such work.  While the ALJ's findings regarding plaintiff's physical

capabilities are fully supported by substantial evidence in the record,

including notes of plaintiff's treating caretakers as well as her hearing

testimony, the ALJ's evaluation of plaintiff's mental impairment is deficient and fails to set forth findings in the areas prescribed by the governing regulations.  Accordingly, it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability VACATED and the matter be REMANDED to the agency for further consideration consistent with this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:     August 30, 2006
           Syracuse, NY